## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| MELODY WHITLOCK and ) | |
| PAMELA ROHRBACH, ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| v. ) | Case No. 04-369-CV-W-GAF |
| ) | (Consolidated with Case No. 04-370) |
| KEY PROPERTIES I, L.C., ) | Effective June 2, 2004 |
| DOLGENCORP, INC. *d/b/a* DOLLAR ) | |
| GENERAL STORES, and ) | |
| DOLLAR GENERAL CORPORATION ) | |

### ORDER

Presently before this Court is a Motion for Summary Judgment filed by the Defendant, Key Properties I, L.C. ("Key"). (Doc. #41). The Plaintiffs, Melody Whitlock and Pamela Rohrbach (collectively "Plaintiffs"), were victims of a third party criminal assault occurring on property Key had leased to Dolgencorp, Inc. ("Dolgencorp"). Id. Whitlock and Rohrbach filed this action against Key asserting premises liability and breach of contract claims. (Pl.'s Compl.). Key argues that it is entitled to summary judgment on the Plaintiffs' premises liability claim because Key does not have a duty to warn or protect its tenant's business invitees from third-party criminal assaults on premises which it does not possess. (Doc. #41). Key further argues that summary judgment should be granted in its favor on the Plaintiffs' breach of contract claim because Key did not assume a duty to protect Dollar General's business invitees from third party assaults in the lease agreement between Key and Dolgencorp. Id.

Finding that Key was not in possession of the premises where the assault occurred and Key did not contractually assume a duty to protect business invitees from third party assaults, Key's Motion for

1

Summary Judgment is GRANTED.

## DISCUSSION

**I.     Facts**

On October 3, 1998, Whitlock and Rohrbach were working at the Dollar General store located at 3611 South Noland Road in Independence, Missouri. (Doc. #41, ¶¶ A5, A1, E27). Shortly after the store had closed and Rohrbach had locked the front doors, the two women were sitting in the store's office counting money. (Doc #41, Whitlock Dep., pg. 7 and Rohrbach Dep., pg. 10). A man appeared in the doorway to the office, demanded money and shot Rohrbach once in the neck. (Doc. #41, Whitlock Dep., pg. 7 and Rohrbach Dep., pg. 14). The entire assault occurred within the Dollar General store, and there were no signs of an assault outside of the store. (Doc. #41, #44 at ¶ 26). Although no one is certain how the assailant gained entry into the store, Whitlock, Rohrbach and Police Officer Taylor all presume that the assailant entered the Dollar General store before closing, and hid himself in an unlocked storeroom. (Doc. #41, #44 at ¶¶ 29, 30, 31). Neither Whitlock nor Rohrbach saw the assailant prior to the assault. (Doc. #41, #44 at ¶¶ 32, 33).

The police officers responding to the scene of the assault stated that the common areas surrounding the Dollar General store were "well-lit." (Doc. #41, #44 at ¶¶ 16-18). Although both Plaintiffs stated that they did not have an opportunity to observe the lights behind the Dollar General store on the day of the assault, Whitlock testified that the lights in the front of the store were operating on the evening in question. (Doc. #41, #44 at ¶¶ 19-20). Furthermore, upon inspection one or two days prior to the assault, all the common area lights were found to be functioning properly. (Doc. #41, #44 at ¶¶ 14-15).

Key owned the strip mall within which the Dollar General store was located. (Doc. #41, #44 at

¶¶ 1, 5). Key purchased the strip mall in April 1998 from Noland Road Retail Center Development Company. (Doc. #41, #44 at ¶ 4). At the time Key purchased the strip mall, Dollar General was already a tenant. (Doc. #41, #44 at ¶ 7). The lease on the Dollar General store was signed by the Noland Road Retail Center Development Company, and Key assumed the predecessor landlord's responsibilities upon purchasing the property. (Doc. #41, #44 at ¶8).

Pursuant to the lease, Dollar General enjoyed "complete and exclusive possession" of 3611 South Noland Road. (Doc. #41, Ex. B at pg. 13, § XIX). However, in Section VI of the lease Key retained "the right and responsibility to enter the demised premises, periodically, at any reasonable time, to inspect the condition of the premises and to make repairs." (Doc. #41, Ex. B at pg. 4, § VI). Key further agreed "to maintain all Common Area [sic] in good repair, to keep such area clean, to remove snow and ice therefrom, to keep such areas lighted during hours of darkness when the demised premises are open for business and to keep the parking area property striped to assist in the orderly parking of cars." Id. Dollar General agreed to pay Key "its proportionate share of [Key's] actual cost of care and maintenance on the Common Area . . . Care and maintenance shall include lighting, cleaning, security, snow removal and striping, but shall not include capital repairs." (Doc. #41, Ex. B at pg. 16, § XXIX, C). The parties stipulate that Key was not responsible for installing or maintaining any alarm systems on the property and Dollar General was solely responsible for the doors and locks on the leased premises. (Doc. #41 and #44, ¶¶10, 13).

Whitlock filed this action asserting claims against her employer, Dollar General Corporation, the lessee of the Dollar General store, Dolgencorp, and the lessor of the premises, Key. (Pl.'s Compl.). On May 3, 2004, this Court granted Whitlock's motion to voluntarily dismiss Dolgencorp and Dollar General

3

Corporation from this action without prejudice. (Doc. #6). Rohrbach's lawsuit was subsequently consolidated with Whitlock's action by an Order of this Court dated June 2, 2004. (Case. No. 04-370, Doc. #10).

Consequently, only two claims remain against Key. Whitlock and Rohrbach assert in Count I of their complaint that Key is liable for their injuries because Key, as the owner of the premises where the assault occurred, owed a duty to the Plaintiffs and other business invitees to protect against foreseeable criminal attacks. (Pl.'s Compl. ¶ 16). In Count VI, Whitlock and Rohrbach assert that Key is liable for their injuries because Key contractually assumed a duty, through the lease agreement with Dolgencorp, to protect customers and employees of the strip mall from foreseeable criminal conduct. (Pl.'s Compl. ¶ 39)

The Plaintiffs assert that Key breached its duty to protect them from foreseeable criminal conduct and the terms of the lease agreement by:

> (1) Failing to provide adequate lighting of the parking areas and delivery areas surrounding the strip mall, including the areas in front of and behind the Dollar General store;
>
> (2) Failing to equip the premises with devises to monitor delivery and customer door activity including failure to maintain adequate alarms on said doors;
>
> (3) Failing to provide security guards and/or security patrols around the perimeter of the strip mall before, during and immediately after hours of business of the strip mall merchants including the Dollar General Store; and
>
> (4) Failing to provide adequate surveillance and monitoring capabilities of the exterior doors of the strip mall including the exists and entrances for the shipping and receiving areas of the Dollar General store.

(Pl.'s Compl. ¶¶ 18, 42). Whitlock and Rohrbach assert that as a result of Key's alleged failure to provide adequate lighting and security services, they were criminally assaulted by an unknown third party, thereby suffering debilitating physical and emotional injuries. (Pl.'s Compl. ¶¶ 19, 43)

4

Key filed this Motion for Summary Judgment asserting that it is not liable for the Plaintiffs' injuries under a premises liability theory because it has no duty to protect the Plaintiffs from a third-party criminal assault that occurred entirely within the leasehold premises over which the tenant had "complete and exclusive possession." (Doc. #41). Additionally, Key argues that the Plaintiffs have failed to establish that Key's alleged failure to provide adequate lighting and security services caused the criminal assault. Id. Key further argues that it is entitled to summary judgment on the Plaintiffs' breach of contract claim because Key did not assume a duty in the lease agreement between Dolgencorp and Key to protect Dollar General's business invitees from third party criminal assaults. Id.

Whitlock and Rohrbach present no compelling argument challenging Key's assertion that it was not in possession of the premises where the assault occurred. (Doc. #44). The Plaintiffs argue that Key owed a duty to protect the Plaintiffs from third party criminal assaults because such assaults were foreseeable. Id. Whitlock and Rohrbach fail to present any argument in opposition to Key's assertion that the Plaintiffs have failed to prove causation, an essential element of the Plaintiff's premises liability claim. Id. The Plaintiffs further contend that Key contractually assumed a duty to provide security at the Noland Road property pursuant to the lease provision requiring Dolgencorp to reimburse Key for expenses related to security in the common areas. Id.

## II. Standard

Key filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.

5

R. Civ. P. 56(c). When considering this Motion, the Court views all the facts in a light most favorable to Whitlock and Rohrbach and gives them the benefit of all reasonable inferences. *See* Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

Key bears the burden of proving the absence of disputed material facts. *See* Prudential Ins. Co., 121 F.3d at 366. The burden then shifts to Whitlock and Rohrbach to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the Plaintiffs fail to establish a factual dispute on an essential element of their case, the Court will proceed to determine whether Key is entitled to judgment as a matter of law. *See* E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001). Summary judgment in favor of a defending party is appropriate where the defendant shows:

> (1) facts negating any of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) facts necessary to support the movant's properly pleaded affirmative defense.

Webb v. Reisel, 858 S.W.2d 767, 768 (Mo. Ct. App. 1993).

The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

**III. Analysis**

As a preliminary matter, the Court finds that Whitlock and Rohrbach have failed to set forth specific

6

facts showing that there is a genuine issue of material fact for trial. The Court must examine the facts in the light most favorable to Whitlock and Rohrbach when deciding this Motion; therefore, the material facts recited above are either expressly stipulated to by the parties or are derived from the facts set forth by Whitlock and Rohrbach. As Whitlock and Rohrbach have failed to prove that a factual dispute exists on an essential element of either their premises liability or their breach of contract claims, the Court proceeds to determine if Key is entitled to judgment as a matter of law.

### A. Count I - Premises Liability

In Count I of the complaint, Whitlock and Rohrbach assert that Key "owed a duty to plaintiff[s] and other business invitees of the strip mall to protect against foreseeable criminal attacks." (Pl.'s Compl. ¶ 16). Whitlock and Rohrbach argue that Key breached this duty by failing "to provide adequate lighting," failing "to equip the premises with devises to monitor delivery and customer door activity," failing "to maintain adequate alarms on said doors," failing "to provide security guards and/or security patrols around the perimeter of the strip mall," and failing "to provide adequate surveillance and monitoring capabilities of the exterior doors of the strip mall." (Pl.'s Compl. ¶ 18). As a result of Key's alleged failure to provide adequate lighting and security services, Whitlock and Rohrbach claim they were criminally assaulted by an unknown third party. (Pl.'s Compl. ¶ 19).

Whitlock and Rohrbach assert a premises liability claim in Count I of their complaint. Premises liability is a form of negligence. A negligence claim requires Whitlock and Rohrbach to prove that Key had a duty to protect the Plaintiffs from injury, Key failed to perform that duty, and Key's failure proximately caused injury to the Plaintiffs. *See* L.A.C. v. Ward Parkway Shopping Ctr. Co., L.P., 75 S.W.3d 247, 257 (Mo. 2002) *quoting* Lopez v. Three Rivers Elec. Coop., Inc., 26 S.W.3d 151, 155 (Mo. 2000) (en

banc). Key alleges that the Plaintiffs have failed to prove the duty and causation elements of their premises liability claim.

### 1. The Duty Element

Key asserts that it has no duty to protect its tenant's business invitees from criminal assaults perpetrated on leased premises which Key does not possess pursuant to the terms of the lease. The existence of a duty is purely a question of law. L.A.C., 75 S.W.3d at 257 *quoting* Lopez, 26 S.W.3d at 155. As a general rule, the owner of a business has no duty to protect a business invitee from a deliberate criminal attack by a third person. Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 61 (Mo. 1988) (en banc). A myriad of policy reasons exist to support this rule including "the difficulty that often exists in determining the foreseeability of criminal acts," "the economic consequences of imposing such a duty," and "conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector." Faheen v. City Parking Corp., 734 S.W.2d 270, 272 (Mo. App. 1987). Determining the existence of a duty is ultimately a question of fairness. Groce v. Kansas City Spirit, Inc., 925 S.W.2d 880 (Mo. App. 1996) *decl'd to follow on other grounds by* Richardson v. Quicktrip Corp., 81 S.W.3d 54, 58 (Mo. App. 2002). The inquiry requires the Court to "weigh the relationship of the parties, the nature of the risk and the public interest in the proposed solution." Id. *citing* Faheen, 734 S.W.2d at 273.

In Madden v. C & K Barbecue Carryout, Inc., the Missouri Supreme Court examined the general rule that there is no duty to protect business invitees from the criminal acts of unknown third persons. Madden, 758 S.W.2d at 61-62. In Madden, the court began its analysis by examining Section 344 of the Restatement (Second) of Torts noting that:

> Section 344 of the Restatement of Torts recognizes a duty on the part of a *possessor* of land who holds it open to the public for entry for business purposes to protect members of the public while they are on the land from the intentionally harmful acts of third persons or in the alternative to warn visitors so that they can avoid the harm.

Madden, 758 S.W.2d at 62 (emphasis added). The court proceeded to state that while there is generally no duty on the part of a business owner to protect business invitees from the criminal acts of unknown third persons, "a duty to exercise care may be imposed by common law *under the facts and circumstances of a given case*." Id. at 61. The Missouri Supreme Court held:

> Consistent with the holding in Virginia D.,[1] with the court of appeals decision in Brown,[2] *and with the rule established by the Restatement of Torts*, the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case. The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.

Madden, 758 S.W.2d at 62 (emphasis added).

Prior to Madden, a possessor of land owed a duty to protect business invitees from the criminal acts of unknown third persons when a "special relationship" existed between the possessor and the business

---

[1] "In Virginia D. v. Madesco Investment Corp., 648 S.W.2d 881 (Mo. Banc 1983), the Missouri Supreme Court recognized a duty on the part of a hotel owner to protect hotel guests from the criminal acts of unknown third persons. The recognition of a duty in Virginia D. was based in part on the existence of a special relationship between the plaintiff and the defendant, i.e., innkeeper-guest, but it was also based in part on the existence of special facts, i.e., evidence of prior criminal incidents sufficient to alert management to the possibility that its patrons might be in danger. Id. at 888." Madden, 758 S.W.2d at 62.

[2] "In Brown v. National Supermarkets, Inc., 679 S.W.2d 307, 309 (Mo. App. 1984), the Missouri Court of Appeals held that sixteen reported robberies involving a firearm, seven reported strong arm robberies, and 136 other reported crimes allegedly occurring on the defendant's premises over a two year period constituted special facts giving rise to a duty to protect patrons from the criminal assaults of unknown third parties. Id. at 309-10." Madden, 758 S.W.2d at 62.

9

invitee. Richardson v. Quicktrip Corp., 81 S.W.3d 54, 58 (Mo. App. 2002). Additionally, a possessor of land owed a duty to protect business invitees from the criminal acts of unknown third persons "where it was shown that *frequent* and *recent* occurrences of *violent* crimes by unknown assailants had occurred on the premises of the business." Richardson, 81 S.W.3d at 58 (emphasis added). This was known as the "violent crimes exception." Id. at 59.

Some courts have mistakenly interpreted the Madden decision as simply restating the violent crimes exception. Id.[3] Rather, the Madden decision shifted the focus of "premises liability cases involving third party criminal acts to impose a duty when it is foreseeable under the facts and circumstances of the case that the conduct of a third person is likely to endanger the safety of a business invitee." Richardson, 81 S.W.3d at 59. Missouri courts struggling with the application of Madden's foreseeability emphasis have attempted to adopt a variety of special tests or methods for analyzing the issue including a "prior similar incidents" test, a "totality of the circumstances" test, or a "balancing" test. L.A.C., 75 S.W.3d at 258. However, the Missouri Supreme Court has recently re-examined the Madden decision and concluded that Madden "merely followed traditional principles of the law of negligence" and encouraged courts to "simply utilize traditional tort language" when determining the existence of a duty. L.A.C., 75 S.W.3d at 257.

One traditional principle of the law of premises liability, the specific form of negligence at issue in this case, is that the defendant must have possession or control of the premises where the injury occurred to be held liable for the injury. See Wright v. St. Louis Produce Mkt., Inc., 43 S.W.3d 404 (Mo. App. 2001). "An owner's duty to protect others grows out of the owner's ability to take reasonable steps on the owner's own property to protect others against foreseeable harm from third parties." Groce, 925

---

[3]*See* Groce v. Kansas City Spirit, Inc., 925 S.W.2d 880 (Mo. App. 1996), *cited supra*.

10

S.W.2d at 885. The Missouri Court of Appeals articulated the rationale behind its rule requiring control by the defendant of the premises where the attack occurred as follows:

> The defendant's duty to provide protection arises from his occupation of the premises. By occupying the premises the defendant has the power of control and expulsion over the third party. If a defendant does not occupy the premises, then he has no potential control or ability to oust a third party. The defendant therefore, is not liable for his failure to provide security when he does not control the premises upon which a third party assaults a plaintiff.

Groce, 925 S.W.2d at FN1 *quoting* Barefield v. City of Houston, 846 S.W.2d 399 (Tex. App. 1992).

Here, the land owner, Key, argues that it is not liable for Whitlock and Rohrbach's injuries because Key was not in possession of the property. Rather, Key had leased the property to Dollar General. "Possession" is defined in § 328E of the Restatement (2nd) of Torts[4] as follows:

> A possessor of land is
>     (a) a person who is in occupation of the land with intent to control it or
>     (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>     (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Key, as the landowner of record, is presumed to have possession of the land absent any evidence to the contrary. Lahr v. Lamar R-1 School District, 951 S.W.2d 754, 756 (Mo. App. 1997). However, Key has presented evidence that Dollar General, not Key, possessed the premises where the assault occurred.

Here, Key has leased the property where the attack occurred to Dollar General. The lease gave Dollar General "complete and exclusive possession" of 3611 South Noland Road. (Doc. #41, ¶ 12, Ex. B at pg. 13 § XIX). The parties stipulate that Key did not install or maintain any alarm systems on the property. (Doc. #41, ¶ 10; Doc. #44, ¶ 10). Furthermore, the parties agree that Dollar General was solely

---

[4] The Missouri Supreme Court adopted § 328E of the Restatement (2nd) of Torts as it relates to the definition of possession of land in J.M. v. Shell Oil Co., 922 S.W.2d 759, 763 (Mo. 1996) (en banc).

11

responsibility for the doors and locks on the premises pursuant to the lease. (Doc. #41, ¶ 13; Doc. #44, ¶ 13). Dollar General's control over any alarm systems on the property and its responsibility for the doors and locks on the premises allows Dollar General to control access to the property. As the lease provided Dollar General with "complete and exclusive possession" of the premises, control over any alarm systems on the property and responsibility for the doors and locks, this Court finds that Key had relinquished possession and control of the premises to Dollar General and is thereby relieved of its duty to protect an invitee from the criminal acts of third persons.

In response to Key's argument that it is not liable for Whitlock and Rohrbach's injuries because Key was not in possession of the premises, Whitlock and Rohrbach attack Key's reliance on J.M. v. Shell Oil Company, 922 S.W.2d 759 (Mo. 1996) (en banc). While purchasing gasoline at a Shell convenience store and gasoline station, the plaintiff in J.M. was abducted, sexually assaulted and shot in the head by an unidentified assailant. J.M., 922 S.W.2d at 761. The trial court granted summary judgement in favor of the defendant, Shell Oil Company, the lessor/franchisor of the station, finding that Shell was not the possessor of the property. Id. The trial court noted that Shell could be held liable for the plaintiff's injuries even though it did not possess the property if the plaintiff could prove that Shell had the right to control the lessee/franchisee. Id. The trial court further found that Shell did not have the right to control the lessee/franchisee. Id.

While the appellate court agreed that Shell was not in possession of the property, the appellate court reversed the trial court's grant of summary judgment finding that a genuine issue of material fact existed regarding whether Shell had the right to control the lessee/franchisee's provision of security at the station. Id. at 764. Specifically, the appellate court found that the contractual terms of the lease were

12

internally contradictory as some provisions declared that no agency or master/servant relationship existed between the parties and other provisions gave detailed guidance on such matters as reporting crime, architectural design, approved uniforms, loitering, lighting display of products, vending machines, hours of operation, adequacy and training of staff, safety and orderliness of the premises, and routine inspections to ensure compliance with Shell's standard operating policies. Id. The Missouri Supreme Court affirmed the appellate court's reversal of the trial court's grant of summary judgment and ordered the case remanded to the trial court for further proceedings. Id. at 765.

This Court finds that the Missouri Supreme Court's decision in Shell supports Key's position that it must "possess" the property in order to owe a duty to protect Whitlock and Rohrbach from criminal attacks by third parties. The Shell court recognized the general rule, consistent with traditional principles of premises liability law, that "a lessor of land is not subject to liability for injuries to the business invitee of a tenant due to defects on the premises" where the lessor of land is not the possessor of the land. Shell, 922 S.W.2d at 765. The Missouri Supreme Court agreed with the trial court's conclusion that the lessee/franchisee, not the lessor/franchisor, was the possessor of the leased premises because the lessee/franchisee was in occupation of the premises. Id. The court proceeded to recognize that where the lessor/franchisor is not in possession of the leased premises, the landlord may still be held liable "where the lessor exercised such control over the business operations of the leased premises that the lessee is treated as a servant of the lessor." Id. at 764.

Here, Key has argued that it is not liable for the injuries to Whitlock and Rohrbach because Key was not in possession of the leased premises where the assault occurred. Whitlock and Rohrbach do not explicitly argue that Key should be excepted from the general rule that a lessor who is not the possessor

13

of land is not liable for the injuries to business invitees caused by third party criminal assaults. Rather, Whitlock and Rohrbach impliedly contend that Key is not relieved of its duty to protect business invitees from the criminal acts of third persons because Key exercised control over the common areas of the strip mall and failed to properly maintain and provide adequate lighting and security for these areas. (Doc. #44, pg. 16).[5] Pursuant to the lease, Key agreed

> . . . to maintain all Common Area [sic] in good repair, to keep such area clean, to remove snow and ice therefrom, to keep such areas lighted during hours of darkness when the demised premises are open for business and to keep the parking area properly striped to assist in the orderly parking of cars . . .

(Doc. #44, ¶ 2, Ex. 1 at pg. 4). The lease further provided that Key "has both the right and responsibility to enter the demised premises periodically, at any reasonable time, to inspect the condition of the premises and make repairs." (Doc. #44, ¶ 3, Ex. 1 at pg. 4).

Based on these provisions in the lease, Whitlock and Rohrbach implicitly argue that Key is excepted from the general rule that a landlord is not liable for injuries to business invitees because Key retained sufficient control over the premises to cause Key to be responsible for Whitlock and Rohrbach's injuries. However, the Missouri Court of Appeals has held that:

> The landlord's obligation to make repairs and the landlord's retention of authority to enter the premises are insufficient without more to establish the requisite possession or control by the landlord to make the landlord liable to the tenant for injury resulting from failure to keep the premises in a reasonably safe condition.

---

[5] Whitlock and Rohrbach explicitly argue, "What the defendant's argument ignores is the fact that it was the defendant's negligence with regard to the common areas surrounding the Dollar General store which permitted the assaults inside the Dollar General Store to occur. Specifically, the lack of lighting behind the Dollar General Store, the fact that the back entrance to the Dollar General Store was not visible from Noland Road and the fact that defendant failed to provide security for the common areas of the strip mall." (Doc. #44, pg. 16-17). As this argument focuses entirely on the breach element of a negligence action, it fails to rebut Key's argument regarding the duty element.

14

Wright, 43 S.W.3d at 413. As such, Key's covenant to maintain and repair the common areas fails to demonstrate that Dollar General surrendered its right to exclusive possession and control over the leased premises. Key's duty to keep the premises in a reasonably safe condition does not extend to the leased unit; rather, the duty applies only to the common areas.

As Whitlock and Rohrbach were injured in the leased unit wherein Dollar General had relieved Key of its duty to maintain the premises in a reasonably safe condition pursuant to the lease, Whitlock and Rohrbach are precluded from recovering from Key on a premises liability theory. Key was not in possession of the premises where the assault occurred; therefore, Key was unable to take reasonable steps to protect Whitlock and Rohrbach from criminal assaults by unknown third parties. Therefore, Key's Motion for Summary Judgment on Count I of the Plaintiffs' complaint is GRANTED.

### 2. The Causation Element

Key further argues that Whitlock and Rohrbach have failed to prove that Key's alleged failure to provide adequate lighting and security services caused the attack. (Doc. #41). No one is certain how the assailant gained entry into the Dollar General store. Whitlock, Rohrbach and Police Officer Taylor presume that the assailant entered through the front door during regular business hours and hid inside the store until the store closed for business. The police officers responding to the scene have stated that the area around the store was "well-lit." There was no evidence that the presence of security guards and/or cameras would have prevented the attack.

Whitlock and Rohrbach bear the burden of proving a direct connection between Key's alleged failure to provide adequate lighting and security services and their injuries. *See* Rose v. Thompson, 141 S.W.2d 824, 829 (Mo. 1940). Additionally, Whitlock and Rohrbach must show that their injuries were

15

the "natural and probable consequences" of the alleged negligence of Key, "which ought to have been foreseen or reasonably anticipated in the light of the attendant circumstances." *See* Davis v. Schroeder, 291 F. 47, 49 (8th Cir. 1923). If Whitlock and Rohrbach fail to produce sufficient evidence to prove that Key's alleged negligence was both the direct and proximate cause of their injuries, Key is entitled to summary judgment. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Key contends that Whitlock and Rohrbach have failed to establish that the lighting and/or the lack of security services was the direct and proximate cause of the Plaintiff's injuries. To prove that Key's alleged negligence directly caused their injuries, Whitlock and Rohrbach must present facts which show that, "absent the negligent act, the injury would not have occurred." Rose, 141 S.W.2d at 402. Whitlock and Rohrbach have offered no evidence to prove that but-for Key's alleged failure to provide adequate lighting and security services in the common area, the Plaintiffs would not have been the victims of a third party criminal assault. Furthermore, Whitlock and Rohrbach have failed to offer any evidence that "the natural and probable consequences" of Key's alleged failure to provide additional lighting and security services in the common areas was that an assailant would enter the Dollar General store as a normal customer during regular business hours, secret himself inside the store, and assault employees after the business had closed.

Whitlock and Rohrbach failed to present any argument to rebut Key's contention that they failed to meet their burden of proof on the essential element of causation. As the Plaintiffs do not dispute that they have neglected to present evidence to support an essential element of their premises liability claim, Key's Motion for Summary Judgment is GRANTED.

### B.     *Count IV - Breach of Contract*

16

Whitlock and Rohrbach further allege in Count IV of their complaint that the lease required Key "to take security measures at the Noland Road strip mall so as to protect customers and employees at the strip mall from foreseeable criminal conduct." (Pl.'s Compl. ¶¶ 39-47). In support of their position that Key contractually assumed a duty to provide security at the Noland Road property, Whitlock and Rohrbach cite Section C, "Common Area Maintenance" of Section XXIX, "Special Stipulations," of the lease agreement which provides in relevant part:

> Lessee agrees to pay Lessor its proportionate share of Lessor's actual cost of care and maintenance on the Common Area . . . Care and maintenance shall include lighting, cleaning, security, snow removal and striping, but shall not include capital repairs . . .Lessee shall not be obligated to Lessor under this Clause until Lessee receives from lessor an itemized statement of total common area expenses along with the computation of Lessee's proportionate share of such costs. . .

Key argues that this clause does not require Key to provide security services but rather requires Dollar General to reimburse Key for security services, if provided. (Doc. # 48). The Court notes that in other provisions of the lease, Key explicitly assumes a duty to provide lighting, cleaning, and snow removal in the common areas and striping of the parking lots.[6] As Key does not explicitly assume a duty to provide security, when it has explicitly assumed a duty to provide the other enumerated services, this Court finds, under the maxim *expressio unius est exclusio alterius*, that Key did not contractually assume a duty to provide security services in the common areas.

Furthermore, the Missouri Court of Appeals has found that a business's choice "to have a security program is not equivalent to the assumption of a duty to protect invitees from third party criminal acts."

---

[6]Section V, "Common Areas," provides: "Lessor agrees, at its own expense, to maintain all Common Area [sic] in good repair, to keep such area claim, to remove snow and ice therefrom, to keep such area lighted during hours of darkness when the demised premises are open for business and to keep the parking area properly striped to assist in the orderly parking of cars." No where in this section does Key assume a contractual obligation to provide security in the common areas.

Brown v. Schnuck Markets, Inc., 973 S.W.2d 530, 535 (Mo. App. 1998). To extend a greater duty for the benefit of business invitees, based solely on the implementation of a security program, "would undermine the public policy that encourages landowners to provide for the safety of their premises." Id. Therefore, the Missouri courts have stated that express assurances of safety coupled with the implementation of a security program is required to find that a business has assumed a duty to protect business invitees from third party criminal acts. Brown, 973 S.W.2d at 353; *See also* Keenan v. Miriam Foundation, 784 S.W.2d 298 (Mo. App. 1990), Miller v. South County Center, Inc., 857 S.W.2d 502 (Mo. App. 1993). As such, the provision requiring Dollar General to reimburse Key for security expenses, in the absence of any express assurances of safety, does not give rise to a duty to protect business invitees from criminal attacks by third parties. As such, Key's Motion for Summary Judgment on Count IV of the complaint is GRANTED.

## CONCLUSION

Key has no duty to protect its tenant's business invitees from criminal assaults perpetrated on leased premises which Key does not possess. Furthermore, Whitlock and Rohrbach have failed to prove that Key's alleged failure to provide adequate lighting and security services caused Whitlock and Rohrbach to be victims of a third party criminal assault. Accordingly, Key's Motion for Summary Judgment on the Plaintiffs' premises liability claims (Count I) is GRANTED. Additionally, Key's Motion for Summary Judgment on the Plaintiffs' breach of contract claims (Count VI) is GRANTED as Whitlock and Rohrbach have failed to prove that Key assumed a duty to protect Dollar General's business invitees from criminal attacks by third parties.

**IT IS SO ORDERED.**

                                                /s/ Gary A. Fenner
                                                GARY A. FENNER, JUDGE
                                                 United States District Court

DATED:    June 21, 2005